UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OUTER CAPE LOBSTERMEN'S ASSOCIATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC STATE MARINE FISHERIES COMMISSION and PHILIP COATES, in his capacity as Director of the Massachusetts Division of Marine Fisheries,<br><br>Defendants. | Civil Action No. 98-CV-10165-RCL-WGY<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO REOPEN CASE AND LIFT THE ADMINISTRATIVE STAY** |

NOW COMES the Plaintiff, Outer Cape Lobstermen's Association, by and through its undersigned attorneys, and respectfully submits this Memorandum of Law in Support of the Emergency Motion to Reopen Case and Lift the Administrative Stay.

### INTRODUCTION

According to the Order for Closure, filed July 19, 2000, this case was closed "in order to avoid the necessity for counsel to appear at periodic status conferences" and the case "may be reopened upon motion by any party demonstrating that the above-entitled impediment to trial has been removed." [Docket No. 54.][1] That condition has been met. Twenty-five years after the parties reached an amicable settlement to exempt the Outer Cape lobstermen from the prohibition on fishing V-Notched lobsters, the Massachusetts Division of Marine Fisheries ("DMF") has gone back on its word. It is revoking its regulatory exemption and is now prohibiting all Outer Cape

---

[1] Given the age of this action, the relevant docket cites are attached as exhibits to the Declaration of Samuel P. Blatchley, filed herewith.

1

Lobstermen from fishing for V-Notched lobster via an emergency rule set to go into effect on July 1, 2025.

Given that trial in this matter was to resolve the issue of whether such a mandate was arbitrary and capricious and scientifically baseless, trial is now an unfortunate necessity. Given DMF's abbreviated timeline, trial will need to occur prior to July 1, 2025, or otherwise the Court will need to stay the implementation of the emergency rule until such time as a trial can take place. Alternatively, it could hold a Rule 65 consolidated trial on the merits of a preliminary injunction.

## FACTS

This action began almost thirty years ago when the DMF, at the urging of the Atlantic States Marine Fisheries Commission ("ASMFC"), attempted to impose mandatory V-Notching on Outer Cape lobstermen and ban them from fishing V-Notched lobster. [Docket No. 22 at 3-7.] V-Notching is a process by which a lobster is mutilated by having a portion of its tail cut in a V shape. [*Id.*]



After an extensive litigation process including unavailing motions to dismiss by Defendants and an allowed Second Amended Complaint, this action was set to proceed to trial on April 15, 2000, on Plaintiffs' declaratory judgment claims. [Docket No. 22, 47, 52.]

Before the trial could commence, the parties' reached an effective settlement (not codified in a written settlement agreement given the nature of the agreed upon relief), wherein DMF agreed to promulgate regulations that would require Outer Cape lobstermen to use 3 5/16" minimum size gauge increase in exchange for not having to V-Notch and being permitted to fish V-Notched lobster. *See* 322 CMR 6.02 (2000). In light of this, this Court issued an Order for Closure, administratively closing the case without final judgment:

> In order to avoid the necessity for counsel to appear at periodic status conferences, it is hereby ORDERED that the above-entitled action be and hereby is CLOSED without entry of judgment. All material statutes of limitation are tolled as of the date of the filing of the complaint herein as to all matters raised therein. The case may be reopened upon motion by any party demonstrating that the above-entitled impediment to trial has been removed. This closure is without prejudice to either party moving to restore it to the docket, if any further action is required.

[Docket No. 54.] Following this, DMF's own director Philip Coates, i.e. *the named defendant*, admitted "[Lobsters are] our most important coastal species. And we're not going to save the lobster resource with v-notching and a maximum gauge. In my heart, I know the Outer Cape lobstermen are correct. There should be real trap reductions and an increase in the minimum size." (Declaration of S. Blatchley in Support of Motion to Dismiss ("Blatchley Decl."), ¶ 4, Ex. B.)

For 25 years, the settlement held. Until today. Now the DMF has finalized an "emergency" rule that mandated V-Notching on all Outer Cape lobstermen, while keeping in place the higher gauge requirement. 322 CMR 6.02.

In relevant part, DMF has explained in its Regulatory Updates – 2024 Q3 and Q4:

> DMF promulgated a series of regulatory changes affecting the harvest and possession of lobsters by commercial and recreational fishers and the possession and sale of lobsters by seafood dealers. This included a series of changes to be phased in over time affecting minimum and maximum carapace size standards, v-notch possession rules, and minimum escape vent sizes for traps. This action was taken to comply with Addenda XXVII and XXXI to the Interstate Fishery Management Plan for American Lobster.

3

> These addenda were developed to increase the spawning stock biomass of the Gulf of Maine/Georges Bank lobster stock by proactively implementing measures in response to declining recruitment trends and an anticipated decline in stock abundance driven primarily by environmental factors.
>
> Commercial Fishery. Effective for the 2025 permit renewal season, permit holders authorized to fish traps in Lobster Conservation Management Areas (LCMAs) 1 and 3 will no longer be issued annual trap tags in excess of their trap allocation (i.e., an additional 10%) to pre-emptively cover trap loss. Then, the first in a series of changes to biological measures will go into effect on July 1, 2025 when the LCMA 1 minimum carapace size will be increased by 1/16" from 3 1/4" to 3 5/16" and a standard maximum carapace size of 6 3/4" *and v-notch possession rule of 1/8" depth with or without setal hairs will be adopted for the Outer Cape Cod LCMA. Currently, the Outer Cape Cod LCMA has disparate rules for state-only permit holders and federal permit holders and this action brings the rules affecting state-only permit holders in line with the current rules for federal permit holders.* Moving forward, a series of additional changes are scheduled to go into effect from 2027 to 2029. On July 1, 2027, the minimum carapace size for LCMA 1 will again be increased by 1/16" from 3 5/16" to 3 3/8". On July 1, 2028, the minimum escape vent sizes for lobster traps in LCMA 1 will be increased from 1 15/16" by 5 3/4" to 2" by 5 3/4" (rectangular vents) and from 2 7/16" diameter to 2 5/8" diameter (circular vents). This is consistent with the escape vents used in other LCMAs with a minimum carapace size of 3 3/8". Lastly, on July 1, 2029, the maximum carapace size for the Outer Cape Cod LCMA and LCMA 3 will be reduced from 6 3/4" to 6 1/2".

(Blatchley Decl. ¶ 5, Ex. C (emphasis added).)

DMF claimed that it was constrained to prohibit fishing V-Notched lobsters in the OCC to comply with Addenda XXVII and XXXI to the Interstate Fishery Management Plan for American Lobster ("FMP"). The American Lobster fishery is managed under Amendment 3 to the FMP and its 32 Addenda. In May 2023, the ASFMC approved Addendum XXVII to the FMP, ostensibly to further the conservation of lobster stock in the Gulf of Maine/Georges Bank. Addendum XXVII imposed new gauge and escape vent size regulations, styled as an effort "to improve consistency of measures across the GOM/GBK stock." In February 2025, ASFMC approved Addendum

4

XXXI, which postponed implementation of Addendum XXVII until July 1, 2025.[2] Then, in April 2025, ASMFC published proposed amendments to Addendum XXVII which would prohibit fishing V-Notched lobster in the OCC.

ASFMC then adopted Addendum XXXII in May 2025 in response to political pressure from Maine and New Hampshire, both of which had refused to comply with the novel standards set forth in Addendum XXVII.[3] That same meeting, Massachusetts' delegation to ASMFC moved to amend Addendum XXXII to lift the prohibition on V-Notching in the OCC. Outer Cape Lobstermen's Association has been reliably informed at public hearing by an ASMFC Board Member and the Chairman of Massachusetts Fisheries Advisory Commission that Delaware's delegation refused to second the motion, citing neither environmental nor sustainability concerns, but rather its desire for "an increase in their commercial striper" limit. Thus, for nakedly political reasons, a new regulation was imposed on OCC fishermen.

So, despite the fact that Maine and New Hampshire successfully refused to comply with ASFMC's attempted regulatory burden, the DMF decided to fold and breach its settlement agreement with the Outer Cape Lobstermen's Association. On July 1, 2025, the emergency regulation will go into effect.

Thankfully, the emergency regulation has not been made final yet. On May 29, 2025, the Massachusetts Marine Fisheries Advisory Committee (the advisory body DMF is required to consult with before finalizing an emergency rule) rejected DMF's proposal to finalize the emergency rule.[4] However, Plaintiff has been informed and believes that DMF intends to convene

---

[2] https://asmfc.org/wp-content/uploads/2025/02/2025WinterMeetingSummary.pdf
[3] https://asmfc.org/wp-content/uploads/2025/05/2025SpringMeetingSummary.pdf
[4] https://www.mass.gov/doc/may-2025-mfac-business-meeting/download

a meeting with the reconstituted Advisory Committee on July 1, 2025, to revote on the recommended denial.

Regardless of whether the emergency rule becomes final, the emergency rule violates the OCC Settlement. This breach of the settlement between the Outer Cape Lobstermen Association and DMF now brings the original trial concerns to the forefront and necessitates trial.

## STANDARD OF REVIEW

An administratively closed case may be reopened either at the judge's discretion or "at the request of a party." *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 392 (1st Cir. 1999).

## ARGUMENT

This Court administratively closed this case in light of the parties' seeming agreement to resolve the dispute via compromise regulation. But the Court wisely anticipated the possibility that DMF would not honor its word and would attempt to impose illegal regulation on Outer Cape lobstermen. In light of this prescient concern, the Court merely administratively closed the case, and left it open for either party to reopen for trial. Plaintiff Outer Cape Lobstermen's Association now invokes its right to seek the reopening of the case and lifting of that administrative stay and proceed this action to trial.

**I.   This Court Has the Power to Lift the Administrative Stay.**

Stays and administrative closures are not "final decisions" that end litigation. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988) (*quoting Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A "final decision" generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.")) (internal quotes omitted); *see also Psara Energy, Ltd. v. Advantage Arrow Shipping, L.L.C.*, 946 F.3d 803, 808 (5th Cir. 2020) ("The effect of an administrative closure is no different from a simple stay."). Administrative closings

are a way in which courts remove cases from their active files without making any final adjudication. *See Corion Corp. v. Chen,* 964 F.2d 55, 56–57 (1st Cir. 1992) (holding that an order deeming a case "administratively closed" was not a final, appealable order absent a separate document to signal the court's "view that the case had concluded").

An administrative closing may contain a built-in timetable under which it will automatically expire, effectively reinstating the case. *In re Grand Jury Subpoena,* 138 F.3d 442, 443 (1st Cir. 1998). They may also contain a provision in which the closing will mature into a final judgment if no action occurs within a specified period. *Cantrell v. International Bhd. of Elec. Workers,* 69 F.3d 456, 457 (10th Cir. 1995) (en banc).

Here, this Court issued an administrative stay without issuing a final judgment and specifically left itself the option to reopen the case upon request of the parties without a temporal limitation. As such, this Court maintains the power to reopen the litigation.

## II. This Court should Reopen the Case, Lift the Administrative Stay, and Proceed this Action to Trial.

If a regulation is arbitrary and capricious, Plaintiffs should not be subjected to it. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This action was initiated to challenge the mandatory V-Notching and ban on fishing V-Notched lobster imposed by the ASMFC and DMF as arbitrary and capricious. [Docket No. 22.] The action was stayed because DMF withdrew the V-Notching mandate and prohibition in favor of an agreed-upon alternative gauge size increase. 322 CMR 6.02 (2000); [Docket No. 54.] Now that DMF is

attempting to reimpose the regulatory mandate originally being challenged in this action, the "impediment" to trial has been lifted. [Docket No. 54.]

Trial on whether that regulation is arbitrary and capricious or otherwise unsupported by the available scientific evidence is immediately relevant again. This Court should therefore lift the stay and permit this case to proceed to trial on the validity of the V-Notching mandate.

Given the swiftly approaching deadline of the emergency rule, trial will need to occur prior to July 1, 2025, so that Outer Cape Lobstermen's Association and its members are not subjected to an illegal and arbitrary and capricious regulation. Barring that, this Court should enter a temporary restraining order, permit briefing on a preliminary injunction or administrative stay, and consolidate any hearing on the preliminary injunction into a trial on the merits pursuant to Federal Rules of Civil Procedure Rule 65. *See Mass. Lobstermen's Ass'n, Inc. v. NMFS, et al.,* 1:24-cv-10332 (D. Mass. 2024) (consolidating a preliminary injunction hearing into a trial on the merits).

## CONCLUSION

The parties reached an amiable solution twenty-five years ago to withdraw an arbitrary and capricious V-Notching mandate and prohibition and replace it with a gauge increase. Over two decades later, the DMF has decided that compromise is no longer acceptable. By returning to its illegal prohibition, DMF has voided any basis for this case to be administratively stayed. This Court should reopen this matter and permit it to proceed to trial forthwith.

WHEREFORE, Plaintiff Outer Cape Lobstermen's Association respectfully moves this Court to grant its Emergency Motion, reopen this action, and set a date for trial before July 1, 2025. Or, in the alternative, to stay the operation of the emergency regulation banning fishing for V-Notched lobster as represented in 322 CMR 6.02.

|  |  |
|---|---|
|  | Plaintiff Outer Cape Lobstermen's Association, <br> By its attorneys, |
| Dated: June 17, 2025 | /s/ SAMUEL P. BLATCHLEY <br> Samuel P. Blatchley, Esq. (BBO #670232) <br> Eckland & Blando LLP <br> 555 Pleasant Street <br> Office #3B <br> New Bedford, MA 02740 <br> (617) 217-6936 <br> sblatchley@ecklandblando.com |

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025 a copy of the foregoing was filed through the CM/ECF system, and it is available for viewing and downloading from the CM/ECF system such that all appearing counsel have been served with this document by electronic means.

Further, this document will be emailed to the Division of Marine Fisheries, Department of Fish and Game's General Counsel at Jennifer.Sulla2@mass.gov and the ASMFC at info@asmfc.org.

/s/SAMUEL P. BLATCHLEY