UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OUTER CAPE LOBSTERMEN'S ASSOCIATION; BRIAN GIBBONS; STEPHEN SMITH; EAST COAST FISHERIES FEDERATION,<br><br>      Plaintiffs,<br><br>v.<br><br>ATLANTIC STATES MARINE FISHERIES COMMISSION; PHILIP COATES, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE MASSACHUSETTS DIVISION OF MARINE FISHERIES,<br><br>      Defendants. | CIVIL ACTION<br>NO. 1:98-cv-10165-WGY |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

Defendants Atlantic States Marine Fisheries Commission ("ASMFC") and Daniel McKiernan, Director of the Massachusetts Department of Marine Fisheries ("DMF"), respectfully submit this memorandum in support of their motion to dismiss this 27-year-old lawsuit. The suit challenges lobster fishery management measures that seek to protect and build the public's lobster stock by requiring fishermen in the Outer Cape management area, like other lobstermen in New England, to return to the water lobsters that fishermen in other management areas have previously marked with "v-notches," signifying their status as sexually mature, egg-bearing females. Throwing back v-notched female lobsters allows them to continue to grow and reproduce, which helps maintain and replenish the population. As demonstrated below, the lawsuit suffers from multiple threshold legal deficiencies and should accordingly be dismissed.

1

I.  **BACKGROUND**

A.  **This 27-Year-Old Case Concerns a Fishery Management Plan Amendment Adopted by ASMFC in 1997—Not DMF's Recent Regulations.**

ASMFC is a commission created by an interstate compact among fifteen States, Pub. L. 77-539 (1942), *as amended*, Pub. L. 81-721 (1950), which Congress subsequently recognized as a part of the cooperative management regime for Atlantic Coastal fisheries. *See Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Env't Mgmt.*, 585 F.3d 42, 46 (1st Cir. 2009) (providing background on ASMFC). ASMFC prepares and adopts Fishery Management Plans ("FMPs"), which its member States then implement through State laws and regulations. *See id.*

In 1997, ASMFC adopted Amendment 3 to the Interstate Fishery Management Plan for American Lobster. *See id.* Among other conservation efforts reflected in the plan, it required a "[p]rohibition on possession of V-notched female lobsters." *See* Amendment 3 to the Interstate Fishery Management Plan, at 20 (Sec. 3.1.4) (December 1997), *available at* https://asmfc.org/wp-content/uploads/2025/01/lobsterAmendment3.pdf. More specifically, that prohibition applied to "any female lobster bearing a . . . straight-sided triangular cut without setal hairs, at least 1/4 inch in depth and tapering to a sharp point" on its right-of-center tail flipper. *Id.* That practice protects egg-bearing female lobsters against being harvested by fishers, so that they remain available to lay eggs, and as a result, helps preserve the size of the lobster population. This provision of Amendment 3 has remained unchanged since its adoption in 1997.

Plaintiffs filed this lawsuit against ASMFC on January 29, 1998, arguing that Amendment 3 was unlawful because it violated the Magnuson-Stevens Fishery Conservation and Management Act and was arbitrary and capricious. *See* Ex. 1, First Am. Compl., Dkt. 3, at ¶¶

2

20–21 (June 25, 1998).[1] Plaintiffs later amended their pleadings on May 26, 1999, to add DMF's Director as a defendant and to add a claim (Count II) based on a theory that Amendment 3 and provisions of the Atlantic Coastal Fisheries Cooperative Management Act ("ACFCMA"), 16 U.S.C. §§ 5101, *et seq.*, are unconstitutional because they purportedly violate anti-commandeering principles. *See* Ex. 2, Second Amended Complaint, Dkt. 22, at pp. 9–11 (May 26, 1999). Though the Second Amended Complaint did not challenge any DMF regulation, Count II included a request for injunctive relief against Director Coates' enforcement of the provisions of Amendment 3. *See id.*

DMF and ASMFC both moved to dismiss the Second Amended Complaint. *See* Motion by ASMFC to Dismiss, Dkt. 29 (Oct. 4, 1999); Mot. to Dismiss by Philip Coates, Dkt. 34 (Oct. 4, 1999). The Court granted the motions in part and denied them in part, dismissing Count II—the only claim that encompassed any request for relief directed to DMF—while declining to dismiss Count I. *See* Dkt. 43 (Dec. 2, 1999).

Accordingly, the operative pleading in this case includes only a single claim directed to ASMFC. And it concerns only Amendment 3, which was adopted in 1997—not the recent DMF regulations Plaintiffs now cite in their motion for a preliminary injunction, nor any other DMF regulations.

### B. After the Parties Mediated, the Court Administratively Closed This Case.

After the Court ruled on Defendants' motion to dismiss, the parties engaged in mediation. *See* Dkt. 46 (notice of "ADR Conference" scheduled for February 28, 2000). And following

---

[1] Any exhibits cited herein are either public laws, filings in this case (such as the pleadings), or other materials subject to judicial notice. Such materials may be properly considered in evaluating a motion to dismiss. *See Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (explaining that courts may consider "matters of public record[] and other matters susceptible to judicial notice" when deciding motion to dismiss).

3

mediation, the Court entered an order staying and administratively closing the case. *See* Dkt. 54 (July 19, 2000). Based on the records Defendants have been able to locate in the very limited time since Plaintiffs sought to reopen this case, it is not yet clear precisely what led to that stay.

Plaintiffs assert that the parties entered into a settlement agreement that somehow prohibits DMF's recent regulations. *See* Mem. in Supp. of Emergency Mot. to Reopen Case, Dkt. 58, at 1 (June 17, 2025) (arguing DMF has "gone back on its word" from settlement discussions by promulgating the recent regulations). Specifically, Plaintiffs assert that DMF agreed to "permit[] [Plaintiffs] to fish V-notched lobster." *Id.* at 3. But Plaintiffs have failed to provide any agreement in writing or other documentary evidence of what agreement was supposedly reached. Indeed, they concede that there was no written memorialization of any putative agreement by the parties. *See id.* at 3. Plaintiffs assert, without elaboration, that the agreement was "not codified in a written settlement agreement" "given the nature of the agreed upon relief." Dkt. No. 58, at 3. But Plaintiffs do not further specify why the "agreed upon relief" would necessitate that the parties *not* reduce their putative settlement to writing, particularly if any settlement involved making changes to lobster fishers' obligations under duly promulgated federal or State regulations.

In 2000, the same year that agreement was supposedly reached, DMF promulgated a regulation making it "unlawful for any person to possess any v-notched female lobsters," defined to encompass any female lobster marked on its tail with "a straight-sided triangular cut without setal hairs at least 1/4 inch in depth and tapering to a sharp point." Ex. 3, 322 C.M.R. 6.02(3) (2000). And that regulation has been in effect, with minor changes, ever since. *See, e.g.*, Ex. 6, 322 C.M.R. 6.02(5)(e)(3) (2024) (prohibiting possession of lobsters bearing v-notch at least 1/4 inch in size in the Outer Cape Cod LCMA).

Notably, the regulation that was promulgated in 2000 and that remained in effect for 25 years is substantively almost identical to what appeared in Amendment 3. *Compare* Ex. 3, 322 C.M.R. 6.02(3) (2000) (prohibiting possession of lobster bearing v-notch at least 1/4 inch in size, without setal hairs), *with* Second Am. Compl. ¶ 14 (excerpting challenged portion of Amendment 3, which prohibited possession of lobster bearing quarter-inch v-notch without setal hairs). In other words, the requirement DMF promulgated around the same time the parties supposedly settled is essentially the same as the one Plaintiffs challenged in this lawsuit. For the past 25 years, until last week, Plaintiffs have not otherwise challenged or sought to enjoin these longstanding regulations.

      **C.    ASMFC Recently Adopted an Addendum to the FMP to Make the V-Notch Possession Rule in the Outer Cape Slightly More Stringent.**

In May 2023, ASMFC adopted an addendum to the FMP requiring States to "[s]tandardize measures within . . . [Lobster Conservation Management Areas (LCMAs)] to the most conservative measure where there are inconsistencies between state and federal regulations." Addendum XXVII to Amendment 3 to the Interstate Fishery Management Plan for American Lobster, at 14 (May 2023), *available at* https://asmfc.org/wp-content/uploads/2025/01/AmLobsterAddendumXXVII_revisedOct2024.pdf. One such inconsistency among different jurisdictions was how a v-notch was defined for purposes of prohibiting the fishing of v-notched lobsters. Most jurisdictions applied a definition that captured notches at least 1/8" in size, with or without setal hairs; but in the Outer Cape Cod LCMA ("OCCLCMA"), the definition was limited to notches at least 1/4" in size, without setal hairs. Because a v-notch will shrink over time as a lobster molts, a lower size threshold for the v-notch prohibition has the effect of increasing the amount of time that a v-notched lobster may not be harvested—and thereby increasing the likelihood and quantity of egg production.

Conversely, a prohibition with a higher threshold for the v-notch size leaves fewer lobsters protected from harvesting. Thus, the rule in Outer Cape Cod was more permissive than that in other jurisdictions.

This new requirement had the effect of requiring "a v-notch possession definition of 1/8" with or without setal hairs for all permit holders in Outer Cape Cod (OCC)." *Id.* That is, while the then-existing Massachusetts regulation prohibited possession of a lobster bearing a v-notch that is at least *1/4* inch in size *without* setal hairs, ASMFC's new addendum would require Massachusetts to change its regulations to prohibit possession of a lobster bearing a v-notch that is *1/8* inch in size, *with or* without setal hairs. The addendum required that this change be implemented by July 1, 2025. *See id.*

### D. DMF Recently Revised Its Regulation in Accordance with the FMP Addendum Described Above.

Consistent with ASMFC's 2023 addendum, DMF promulgated the final version of regulations making the v-notch possession rule in the OCC slightly more stringent—the regulations that Plaintiffs now seek to enjoin—on January 3, 2025.[2] *See* Ex. 4, 1538 Mass. Reg. 89 (Jan. 3, 2025). As the addendum specified, these regulations modify the prohibition on possession of v-notched lobsters in the OCC to prohibit possession of a lobster bearing a v-notch that is *1/8* inch in size, *with or* without setal hairs. *See* Ex. 5, 322 C.M.R. 6.02(5)(d)(3)(b). The new v-notch standard that applies to the OCCLCMA goes into effect on July 1, 2025.

---

[2] Plaintiffs have suggested that this change came about in more recent emergency regulations by DMF. That is mistaken. While DMF did promulgate certain emergency regulations in May 2025, those regulations implemented different changes that are irrelevant to Plaintiffs' challenge concerning the rules prohibiting possession of v-notched lobsters.

The new standard that applies to the OCCLCMA does not reflect any sweeping change with respect to harvesting v-notched lobsters. Instead, it merely makes the rule that applies to the OCCLCMA more uniform with the rules that apply in other fisheries.

### E. Plaintiffs Reopen This Federal Action and Seek a Preliminary Injunction.

On June 4, 2025, Plaintiffs filed an emergency motion to reopen this case, arguing that they should be allowed to challenge DMF's recent regulations. *See* Mem. in Supp. of Emergency Mot. to Reopen Case, Dkt. 58 (June 17, 2025). Three days later, on June 20 (more than five months after DMF promulgated its regulations), Plaintiffs also filed a motion for a preliminary injunction seeking to enjoin those regulations. *See* Dkt. 68 (Plaintiffs' Mot. for Prelim. Inj.). However, Plaintiffs have not amended their pleadings to encompass those new regulations. On June 23, the Court ordered that Plaintiff's Motion for Preliminary Injunction be collapsed with trial on the merits and that the Court would hear argument on any grounds for dismissal of this case on June 24. Dkt. 74.

## II. LEGAL STANDARD

The "party invoking the jurisdiction of a federal court carries the burden of proving its existence," and if a complaint fails to provide a basis for jurisdiction, the complaint must be dismissed. *Calderon-Serra v. Wilmington Tr. Co.*, 715 F.3d 14, 17 (1st Cir. 2013).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ARGUMENT

All claims in Plaintiffs' operative pleading, the Second Amended Complaint (Dkt. 22), are legally defective and subject to dismissal under Federal Rule of Civil Procedure 12(b). The purported settlement agreement that Plaintiffs cite in their Motion for Preliminary Injunction

7

cannot save Plaintiffs' case, and in any event, no action regarding the settlement agreement is before this Court. Nor have Plaintiffs properly challenged the recent DMF regulations cited in their Motion for Preliminary Injunction. Plaintiffs have not amended their pleadings to add claims concerning the recent regulations, and even if Plaintiffs were to do so, those claims would likewise be subject to dismissal.

### A. The Court Should Dismiss the First Count of the Second Amended Complaint.

In the first count of Plaintiffs' Second Amended Complaint—set forth at pages 3-8 of that pleading, and which for convenience we refer to as "Count I"—Plaintiffs seek to set aside Amendment 3 to the ASMFC's Interstate Fishery Management Plan for American Lobster, which Plaintiffs claim fails adequately to address overfishing and contains a recommended prohibition on possession of v-notched female lobsters that is alleged to be arbitrary; to violate the Atlantic Coastal Fisheries Cooperative Management Act; exceed the Commission's authority; and lack support insubstantial evidence. *See* Second Am. Compl., ¶¶ 7–20.

#### 1. Plaintiffs Lack any Cause of Action to Challenge ASMFC Plans.

Count I must be dismissed because Congress has afforded private parties like Plaintiffs no private right of action to challenge the ASMFC's fishery management plants. Alleging that a defendant has violated federal law is not enough to maintain a suit in federal court; a plaintiff must also have a cause of action—a right to pursue relief against the defendant. *See, e.g., Alexander v. Sandoval,* 532 U.S. 275, 288 (2001) (plaintiff must identify a cause of action – a "source of substantive law … [that] provides an avenue for relief" (citing *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983))). Plaintiffs have none here.

The standard means to press administrative-law claims, the Administrative Procedure Act, 5 U.S.C. §§ 551, et seq. ("APA"), is unavailable to plaintiffs. As an organization composed

8

of *States* exercising *State* policy power in *State* jurisdictional waters, the ASMFC "is not a federal agency within the meaning of the APA." *New York v. ASMFC*, 609 F.3d 524, 527 (2d Cir. 2010). Despite its more than 80-year history, no precedent holds that the ASMFC's actions may be challenged under the APA or otherwise subjected to judicial superintendence at the behest of private parties. *See also id.* at 531–37 (canvassing reasons why such review does not fit with statutes or federalism principles).[3]

Nor does any other federal law provide for judicial challenges of ASMFC plans by private parties. As the Second Circuit has also explained, the ACFCMA creates no private cause of action:

> "[T]he Supreme Court has come to view the implication of private remedies in regulatory statutes with increasing disfavor." *Hallwood Realty Partners, LP v. Gotham Partners, LP*, 286 F.3d 613, 618 (2d Cir.2002). An implied private right of action exists only if Congress intended to create such a right. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). In looking to the "text and structure," id. at 288, 121 S.Ct. 1511, of the ASMFC Compact and the ACFCMA, we find no exception to the ordinary rule is warranted.

*Atlantic States Marine Fisheries Com'n*, 609 F.3d at 530 n.6. Indeed, the ACFCMA clearly delineates an alternative pathway to challenge ASMFC plan provisions, one whose narrowness and specificity only underlines that absence of a general right of action for the public at large. Under the Compact framework, the Commission "recommends the coordination of the exercise of the polices powers of the several states" of State authority in order to protect interjurisdictional fisheries. ASMFC Compact, Art. IV. Under the ACFCMA, "[i]t is the responsibility of the Federal Government to support such cooperative interstate management

---

[3] This does not mean that the ASMFC's fishery decisions are beyond challenge; the ASMFC's Interstate Fishery Management Program Charter provides for an appeal process by which member States may challenge a fishery management plan, §§ 3(d)(9), 4(h). And member States may sue compacting States or compact organizations to enforce rights under an interstate compact, *e.g., Nebraska v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n*, 187 F.3d 982, 985 (8th Cir. 1999).

of coastal fishery resources." 16 U.S.C. § 1501(a)(4). But under this framework, if a State believes that an ASMFC plan provision is invalid, the State may simply refuse to implement it. Then, if the ASMFC wishes to pursue the matter, it may signal the State's "noncompliance" to the federal Secretary of Commerce.  16 U.S.C. § 5105.  The Secretary then, after hearing comment from the affected State or States, determines whether the measure in question is "necessary for conservation," 16 U.S.C. § 5106(a)(2)—and if so, the Secretary exercises federal authority directly regulating private activity in the fishery in question, subject to federal regulations promulgated by the Secretary.  This mechanism confirms the absence of any mechanism for private-party challenges to the provisions of ASMFC plans.

Nor does any language in the ASMFC Compact (or the ratifying statutes) even arguably provide a private right of action. The absence of a private right to seek judicial review in federal court was no accident. Compacting States, and Congress, know how to provide for such rights of judicial review of compact agencies when they want to. *See, e.g.*, Tahoe Regional Planning Compact, Art. VI(j)(3) ("Any aggrieved person may file an action in an appropriate court of the States of California or Nevada or of the United States alleging noncompliance with the provisions of this compact or with an ordinance or regulation of the agency."), ratified, Pub. L. 96-551 (1980). [4]

---

[4] Plaintiffs' Complaint contains an unelaborated reference (Second Am. Compl. at pp. 7), to "deprivation of liberty and property" in violation of the U.S. Constitution, page but they fail to allege any plausible constitutional violation. "Fishing, whether commercial or recreational, is not a fundamental right and those engaged in these activities are not a suspect class." *Vickers v. Egbert,* 359 F.Supp.2d 1358, 1362 (S.D. Fla. 2005); *Delmarva Fisheries Association, Inc. v. Atlantic States Marine Fisheries Commission,* 2024 WL 1721066, at *3 (D. Md. 2024) (Plaintiffs claiming that bag limit was unlawfully reduced from two fish to one "do not plausibly state a takings claim or deprivation of any other federal constitutional right"), *vacated for lack of standing,* 127 F.4th 509 (4th Cir. 2025). The ASMFC has not "deprived" Plaintiffs of any

(footnote continued)

### 2. Plaintiffs Have Not Alleged Facts Sufficient to Establish their Article III Standing.

The absence of any right of action suffices to require dismissal of Count I. But because failure to establish standing is jurisdictional, that also independently requires dismissal.

ASMFC does not regulate fishing activity. Rather, ASMFC develops interstate fishery management plans that are implemented by member States through their individual State legislation or regulatory processes. Under the ASMFC Compact, moreover, member States have undiminished authority to adopt and enforce measures not required by, or more stringent than, Commission's interstate management plan.[5] This arrangement has implications for Article III standing. As the Fourth Circuit recently confirmed, plaintiffs seeking to challenge an ASMFC plan cannot establish standing without "plausibly alleging" that the State whose laws actually regulate plaintiffs' activity would "likely" respond to an order enjoining the Commission plan by changing the regulation in question:

> But [plaintiffs] are regulated by Maryland, not the Commission. So, to have standing to enjoin the Commission's actions, Plaintiffs must show that doing so will change how Maryland regulates them. Where choices by an "independent actor[ ]" are involved—here, the sovereign state of Maryland—Plaintiffs face the "difficult" burden of showing how Maryland would respond if the Commission's Addendum II were enjoined. *Lujan* [*v. Defenders of Wildlife,* 504 U.S. 555, 562 (1992)]. In other words, Plaintiffs must plausibly allege that Maryland would likely rescind its one-fish limit

---

property, so the federal Constitution does not entitle them to any particular process. *See Mandel v. Allen*, 81 F.3d. 478, 480 (4th Cir. 1996). And Plaintiffs cannot plausibly claim that fishery or wildlife managers' over- or under-protecting marine life amounts to deprivation of a *liberty* or a *private property interest* supporting a due process claim for parties seeking greater or lesser taking of fish or wildlife. No plausible constitutional claim has been alleged here.

[5] ASMFC Compact, Article IX ("Nothing in this compact shall be construed to limit the powers of any signatory state or to repeal or prevent the enactment of any legislation or the enforcement of any requirement by any signatory state imposing additional conditions and restrictions to conserve its fisheries.").

on charter boats if the district court enjoined Addendum II. They have not done so.

*Delmarva Fisheries Assoc., Inc. v. ASMFC*, 127 F.4th 509, 515 (4th Cir. 2025) (footnote omitted). Plaintiffs lack standing here for the same reason that they have failed to allege that Massachusetts would likely rescind its prohibition on fishing v-notched lobsters if the Court were to grant Plaintiffs' requested relief.

### 3. Plaintiffs' Assertions About ASMFC's Recent Actions Likewise Cannot Support Viable Claims

Plaintiffs' assertions about ASMFC decisions post-dating the filing of the complaint by decades suffer from the same defects just described: Plaintiffs lack any viable cause of action, and they lack standing. Accordingly—even apart from Plaintiffs' failure to present these grievances in a complaint for relief—these arguments do not, and could not, provide a basis for allowing Count I to persist.

### 4. Plaintiffs' Assertions About Amendment 3 and ASMFC's Alleged Misdeeds Fail to State a Claim Against the DMR

Count I of the Second Amended Complaint trains its fire solely on the ASMFC. *See* Ex. 2, Second Amended Complaint, Dkt. 22, at pp. 3–8 (May 26, 1999). It does not assert any claim against the DMR. *See id.* Accordingly, Count I should be dismissed as to DMR as well.

### B. Count II Has Already Been Dismissed, and in Any Event, Plaintiffs' Commandeering Claim Is Meritless.

In Count II, Plaintiffs assert that the ACFCMA unconstitutionally commandeers States by requiring them to adopt management plan provisions. The Court has already dismissed Count II. *See* Dkt. 43 (Dec. 2, 1999).

In any event, Plaintiffs' commandeering claim lacks merit. It disregards the careful means in which the ACFCMA was structured which ensures that the statute does not "simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and

12

enforce a federal regulatory program.'" *New York v. U.S.*, 505 U.S. 144, 161 (1992) (quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.,* 452 U.S. 264, 288 (1981)). When an ASMFC member State refuses to implement an ASMFC plan, the ACFMCA does not provide any means to force the State to; rather, in such instances, the statute sets for a specialized process whereby the Secretary of Commerce considers whether to exercise federal regulatory power—*not* over the State, but over private parties engaged in the fishery—and only if the Secretary independently finds, after considering comment from the affected State or States, that the relevant management measures are "necessary for conservation of the fishery." 16 U.S.C. § 5106(a)(2). *Id.* § 5106(d) (providing for federal moratorium in such instances, pursuant to federal regulations promulgated by the Secretary). This cooperative federalism structure, comparable to that upheld in *Hodel* and other cases, raises no legitimate Tenth Amendment concern.

The ASMFC Compact's structure itself supplies another compelling reason Plaintiffs' commandeering charge is unfounded. As the Fourth Circuit recently explained:

> Plaintiffs' allegation that the Commission coerced Maryland to enact the regulations that are allegedly causing them harm is unpersuasive. Maryland voluntarily entered the Commission and may withdraw for any reason. Compact, Art. XII, 56 Stat. 269. As the Commission has authority to recommend plans only to its "member states," Atl. States Marine Fisheries Comm'n, *Rules and Regulations*, Art. I § 2 (1942) (amended 2016), only member states are subject to Bass Act penalties for noncompliance with Commission plans, *see* 16 U.S.C. §§ 5152–5154. And taking a step back, Maryland has collaborated with the other states in the Commission for over eighty years to preserve critical fisheries in the Chesapeake Bay and the Atlantic Ocean. As with any collaboration, sometimes Maryland takes and sometimes it gives. But it would probably surprise Maryland to hear that it has been coerced.

*Delmarva*, 127 F.4th at 515-16.

### C. Plaintiffs Have No Viable Claim Against DMF.

In Plaintiffs' recent motion for a preliminary injunction, they have identified only three legal bases for relief against DMF: (1) DMF's recent regulations are supposedly arbitrary and

capricious or unsupported by substantial evidence, *see* Dkt. 69 at 12–15; (2) DMF's regulations supposedly violate anti-commandeering principles under the Tenth Amendment, Dkt. 69 at 7–10; and (3) DMF's regulations are supposedly unlawful because a different party, ASMFC, purportedly failed to adequately consult with the appropriate councils, *see* Dkt. 69 at 10–12. None of those arguments is legally viable, and none constitutes a sufficiently pleaded claim.

> **1. The Eleventh Amendment Precludes Plaintiffs' Argument That DMF's Regulations Are Arbitrary and Capricious or Unsupported by Substantial Evidence.**

Plaintiffs' primary argument about the alleged unlawfulness of DMF's regulations is based on State law: Plaintiffs assert that DMF's regulations are "arbitrary and capricious or unsupported by substantial evidence." Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, Dkt. 69, at 12 (June 20, 2025).[6] But the Eleventh Amendment prohibits federal courts from adjudicating claims against State officials that are predicated on State law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.").

---

[6] Plaintiffs state with almost no explanation that they "bring this action under the federal Administrative Procedure Act" instead of Massachusetts's Administrative Procedure Act. Dkt. 69 at 12 n.1. But they cannot simply elect to challenge State agency regulations under the federal Administrative Procedure Act, as the federal statute applies only to federal agencies. *See, e.g.*, 5 U.S.C. § 701(b) (defining "agency" to mean "each authority of the Government of the United States"). To challenge a State agency regulation as arbitrary and capricious, only Massachusetts law provides a cause of action. *See* Mass. G.L. c. 30A, § 7 (statutory authorization to challenge State agency regulation under the declaratory judgment statute, Mass. G.L. c. 231A); *see also Massachusetts Fed'n of Teachers v. Board of Educ.*, 436 Mass. 763, 771 (2002) (in challenge to State agency regulation, challenger "must prove that the regulation is illegal, arbitrary, or capricious") (citations and internal quotation marks omitted).

### 2. Plaintiffs' Anti-Commandeering Argument Is Incoherent as Applied to DMF and Its Regulations.

Plaintiffs assert that DMF's regulations violate the Tenth Amendment because they are the result of unconstitutional commandeering *by the federal government*—i.e., Plaintiffs contend DMF violated the Tenth Amendment by allowing itself to be unconstitutionally forced by the federal government to promulgate the regulations. *See* Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, Dkt. 69, at 7 (June 20, 2025). But it is implausible that DMF—a *State* agency—could violate anticommandeering principles under the Tenth Amendment. The Tenth Amendment is exclusively a limit on the *federal government*—meant to *protect* States. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471, 138 S. Ct. 1461, 1476, 200 L. Ed. 2d 854 (2018) ("The anticommandeering doctrine . . . represents the recognition of [a] limit on *congressional authority*." (emphasis added)); *see also New York v. United States*, 505 U.S. 144, 157 (1992) (describing the Tenth Amendment as "confirm[ing] that the power of the *Federal Government* is subject to limits" and "*reserv[ing] power* to the States" (emphasis added)).

### 3. There Is No Legally Viable Argument That *DMF's* Regulations Are Unlawful Because *ASMFC* Supposedly Failed to Collaborate with the Relevant Councils.

Plaintiffs contend that DMF's recent regulations reflected in "322 CMR 6.02 [are] unlawful" because "*AMFSC* did not engage in any discussion with the appropriate Councils before charging forward with Amendment XXVII." Dkt. 69 at 11–12 (emphasis added). That argument is not viable.

As Plaintiffs apparently concede, *see* Dkt. 69 at 11, the statutory requirements Plaintiffs rely upon apply only to *AMFSC* and the Fishery Management Plan that it adopts, not *DMF* and its regulations. *See* 16 U.S.C. § 5104(a)(1) ("[T]he *Commission* shall consult with appropriate

15

Councils to determine areas where such coastal fishery management plan may complement Council fishery management plans." (emphasis added)); *id.* § 5102(3) ("'Commission' means the Atlantic States Marine Fisheries Commission . . . ."). Accordingly, Plaintiffs' allegation that ASMFC somehow failed to comply with that requirement has no bearing on the lawfulness of DMF's regulations.

### D. Plaintiffs Have Failed to Allege, or Otherwise Articulate, a Viable Claim That Defendants Breached Any Alleged Settlement Agreement.

As described above, Plaintiffs' recent submissions vaguely assert that DMF's regulations are "in plain violation of the OCC Settlement that had been in place for over twenty years." *E.g.*, Dkt. 69 at 3. However, Plaintiffs have not actually sought injunctive relief based on that alleged breach. And even if they had, that claim would be unmeritorious for at least four reasons.

***First***, Plaintiffs produce no written agreement reflecting the purported agreement—a striking omission given that defendants are public agencies whose official acts require formal reviews, and who do not lightly engage in (as is claimed here) promises to forgo, for some subset of regulated entitles, common regulatory tools like v-notch requirements permanently, regardless of what conditions may be in the fishery.

***Second***, the Defendants' subsequent conduct was exactly the opposite from that posited: the ASMFC's Amendment 3 has maintained its explicit prohibition on possession of v-notched lobsters consistently since 1997, and Massachusetts regulations likewise have contained such explicit prohibitions since 2000. *See supra at* pp. 3–5. This regulatory track record is quite inconsistent with the suggestion that Defendants agreed never to enforce v-Notch possession prohibitions.

***Third,*** even if some oral promise among the parties were enforceable, Plaintiffs have not provided even remotely sufficient details about what contractual obligations Defendants

supposedly have.  They have not alleged, for example, whether the purported agreement provided for some exemption from enforcement or a promise to promulgate certain regulations (though the regulatory history belies the latter possibility, *see supra* at pp. 3–5).  Nor have Plaintiffs even identified what parties were supposedly covered by this alleged agreement (e.g., whether it was a narrow carveout for certain fishermen who held permits to harvest lobster in the OCC at the time of the agreement or whether it conferred benefits on the public at large). Instead, Plaintiffs have asserted only vaguely that some agreement was reached and DMF's recently promulgated regulations (which merely make the relevant restrictions on harvesting v-notched lobster slightly more stringent, as described above) supposedly violate that agreement. Plaintiffs' vague assertions do not pass muster under Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (requiring complaint to allege "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct").

## CONCLUSION

Plaintiffs' Second Amended Complaint should be dismissed.

Respectfully Submitted,

ATLANTIC STATES MARINE FISHERIES
COMMISSION

By its attorneys,

*/s/ Sean H. Donahue*
Sean H. Donahue (Admitted pro hac vice)
Megan M. Herzog (BBO No. 682948)
Donahue, Goldberg & Herzog
1008 Pennsylvania Ave., SE
Washington, D.C. 20003
(202) 277-7085
sean@donahuegoldberg.com
megan@donahuegoldberg.com

DANIEL MCKIERNAN,
DIRECTOR OF THE MASSACHUSETTS
DIVISION OF MARINE FISHERIES

By his attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Aaron Macris*
Aaron Macris (BBO# 696323)
Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617-963-2987
aaron.macris@mass.gov

Dated:  June 24, 2025

**CERTIFICATE OF SERVICE**

      I hereby certify that, on June 24, 2025, I caused this Memorandum to be served through the Court's electronic filing system and by email upon the following contacts:

Samuel P. Blatchley, Esq.
555 Pleasant Street, Unit 3B
New Bedford, MA 02740
(617) 217-6936
sblatchley@ecklandblando.com

Robert T. Dube, Jr., Esq.
10 South Fifth St., Suite 800
Minneapolis, MN 55402
(612) 236-0160
rdube@ecklandblando.com