UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| OUTER CAPE LOBSTERMEN'S ASSOCIATION, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>ATLANTIC STATES MARINE FISHERIES )<br>COMMISSION and DANIEL MCKIERNAN, in )<br>his capacity as Director of the )<br>Massachusetts Division of Marine )<br>Fisheries )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.<br>98-CV-10165-WGY |

YOUNG, D.J.                                          February 5, 2026

**MEMORANDUM AND ORDER**

**I.   INTRODUCTION**

The Plaintiff, the Outer Cape Lobstermen's Association ("the Lobstermen"), brought this action against the Atlantic State Marine Fisheries Commission ("the Commission"), and Daniel McKiernan, in his official capacity as Director of the Massachusetts Division of Marine Fisheries ("the Defendants").[1]

---

[1] In accordance with Federal Rule of Civil Procedure 25(d), the name of the public official holding the title of Director of the Massachusetts Division of Marine Fisheries has been changed from Philip Coates to Daniel McKiernan (see Daniel McKiernan Appointed as Director, Division of Marine Fisheries, July 27, 2020 https://www.mass.gov/news/daniel-mckiernan-appointed-as-director).

The Lobstermen[2] attempt to revive a lawsuit that began in 1998, some 25 years after the close of that case. Based on the briefing submitted since the 2025 revival of this action, and hearing argument by the parties, the Court rules that it is without subject matter jurisdiction to hear the revived claims. Accordingly, the Court GRANTS the Defendants' 12(b)(1) motion to dismiss.

### A. Procedural History

On January 29, 1998, the Lobstermen filed the original complaint in this action. Compl., ECF No. 1. The Lobstermen filed their Second Amended Complaint on May 26, 1999. Sec. Am. Compl., ECF Nos. 22, 73-2. The Defendants moved to dismiss the Second Amended Complaint on October 4, 1999. Atlantic States' Mot. Dismiss, ECF No. 29; Dir. Atlantic States' Mot. Dismiss, ECF No. 34. This Court held a hearing on the matter, and dismissed Count II on December 2, 1999. Clerk's Notes, ECF No. 43. The parties then engaged in Alternative Dispute Resolution, and this Court administratively closed the case on July 19, 2000. ECF No. 54.

On June 17, 2025, the Lobstermen filed an emergency motion to reopen this case and lift the administrative stay. Emerg. Mot. Reopen Case & Lift Admin. Stay, ECF No. 57. Three days

---

[2] Named Plaintiffs from the 1998 action, Brian Gibbons and Steven Smith, do not appear as movants in the instant action.

[2]

later, the Lobstermen filed a motion for a temporary restraining order, preliminary injunction, and administrative stay. Mot. TRO, Prelim. Inj., & Admin. Stay, ECF No. 68.

On June 23, 2025, this Court held a status conference to address the motion. Elec. Clerk's Notes, ECF No. 74. The Court, per its usual practice, collapsed the motion for a preliminary injunction with trial on the merits in accordance with Rule 65(a).[3] See id. The next day, the Defendants filed a Motion to Dismiss. Defs.' Mot. Dismiss, ECF No. 75. The motion is fully briefed. Defs. Mem. Supp. Mot. Dismiss, ECF No. 76; Mem. Opp'n Defs. Mot. Dismiss ("Opp'n"), ECF No. 77.

**B.   Facts**

The material facts focus primarily on whether a settlement agreement was reached in 2000. The Lobstermen claim that a settlement was reached and allowed them to take "V-notched" female lobsters in exchange for adhering to a more stringent "3 5/16 minimum gauge size requirement, greater than the 3 1/4" minimum in place" for other lobstermen in that area. Mem. Supp. Emerg. Motion, ECF 69 at 2. The Lobstermen concede that this supposed settlement was never reduced to writing.

The Commission casts doubt on whether such an agreement ever existed. It provides the 2000 regulation promulgated after

---

[3] As a result, the Court ruled the motion for a temporary restraining order was MOOT. Elec. Clerk's Notes, ECF No. 74.

[3]

the supposed settlement, which shows no exemption for the Outer Cape lobstermen to take V-notched lobsters. See 322 C.M.R. 6.02(3) (2000), ECF No. 76-3. It also provides the 2024 regulations that are mostly unchanged, still showing no exemption for the Lobstermen to take V-notched lobsters. See 322 C.M.R. 6.02(5)(e)(3) (2024), ECF No. 76-6.

It is unclear from the record whether any state-level enforcement against the Lobstermen has occurred in the last 25 years, as they seem to believe that they have been allowed to take female V-notched lobsters via some kind of extra-regulatory agreement that is not codified in writing anywhere in the regulations themselves nor in any other written document.

## II. ANALYSIS

### A. Count II of the 1999 Complaint

The Second Amended Complaint (ECF No. 73-2) is the operative complaint in this action. The Court dismissed Count II of the Second Amended Complaint on December 2, 1999. ECF No. 43. Count II alleged that the Atlantic States Coastal Fisheries Cooperative Management Act violates anti-commandeering principles in the United States Constitution. See Sec. Am. Compl. ¶¶ 21-27. Since this Court previously dismissed count II, and there is no evidence that the underlying structure of the challenged law (the Atlantic States Coastal Fisheries Cooperative Management Act, 16 U.S.C. §§ 5101-5108) has changed

[4]

in the last twenty-six years, there is no occasion to relitigate the Constitutional challenge.

### B. Count I of the 1999 Complaint

The remaining count from the Second Amended Complaint relates to the Commission's promulgation of the 1997 Amendment #3 to the Interstate Fishery Management Plan for Lobster, alleging that this promulgation was arbitrary and capricious under the Administrative Procedure Act. Sec. Am. Compl. ¶¶ 16, 19-20. The Lobstermen allege that the dispute over Amendment #3 was settled with a verbal agreement that the Lobstermen would be exempt from Amendment #3's prohibition of V-notch takes, in exchange for other restrictions on takes. Opp'n 11-13.

### C. The Motion to Dismiss

#### 1. Legal Standard

Granting a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) "is appropriate only when the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). "While the court generally may not consider

[5]

materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002), as corrected (May 8, 2002).

### 2. Analysis

This Court has an obligation to examine its own subject matter jurisdiction sua sponte. See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). Here, due to the extraordinary lapse in time since this action was closed, the Court rules it appropriate to determine whether this dispute is properly before it. "Because federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).

The Lobstermen claim subject matter jurisdiction based on the Declaratory Judgement Act, 28 U.S.C. §§ 2201-2202, the Court's "equitable powers," the Administrative Procedure Act, 5 U.S.C. §§ 551-559, and the Constitutional commandeering claim. Opp'n. Mot. Dismiss at 2. As an initial matter, the Constitutional commandeering claim was dismissed in 1999 and, as discussed above, it cannot now provide a basis for subject matter jurisdiction. The Declaratory Judgement Act alone does not confer subject matter jurisdiction upon the federal courts where it is otherwise lacking. See Volkswagen de Puerto Rico,

Inc. v. Puerto Rico Lab. Rels. Bd., 454 F.2d 38, 40 (1st Cir. 1972); Schilling v. Rogers, 363 U.S. 666, 677 (1960).

Even assuming for the sake of argument that the alleged agreement exists, this Court's "equitable powers" to enforce such an agreement are not a sufficient basis for subject matter jurisdiction. See Avdeeva v. Tucker, 138 F.4th 641 (1st Cir. 2025.) The First Circuit has stated that:

> [A] federal court does not have inherent jurisdiction to enforce a settlement merely because it presided over the law suit that led to the settlement." F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R., 449 F.3d 185, 189 (1st Cir. 2006) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80 (1994)). A federal court can exercise ancillary jurisdiction to enforce that agreement only where the terms of the agreement are incorporated into the order of dismissal. Id. at 189-90.

Id. at 648. Since no final judgement was entered in this case prior to its administrative closure in July of 2000, the Court did not explicitly retain jurisdiction over any alleged settlement. Cf. F.A.C., Inc. v. Cooperativa de Seguros de Vida de Puerto Rico, 449 F.3d 185 (1st Cir. 2006) (in which a final judgment was entered as a basis for continuing federal jurisdiction). Thus, even assuming that these parties entered such a settlement, the interpretation and enforcement of that private settlement would be properly adjudicated in the courts of the Commonwealth of Massachusetts.

The First Circuit has not decided whether the Atlantic State Marine Fisheries Commission constitutes an "agency" within

[7]

the meaning of the Administrative Procedure Act as matter of law. The Second Circuit and Fourth Circuits, however, have ruled that the Commission is not an agency within the meaning of the Administrative Procedure Act. New York v. Atl. States Marine Fisheries Comm'n, 609 F.3d 524, 531 (2d Cir. 2010); United States v. Saunders, 828 F.3d 198, 205 (4th Cir. 2016). This Court agrees with the reasoning presented in those opinions. The Commission is, in fact, "an aggregation of states." New York, 609 F. 3d. at 533. Congress has approved the entity, but it does not follow that Congressional recognition of an interstate compact renders that entity an "agency" under the meaning of the Administrative Procedure Act. Id.

The Lobstermen's citation to Campanale & Sons, Inc. v. Evans, 311 F.3d 109, 116 (1st Cir. 2002), is unavailing. See Opp'n. 8, 9. The named defendant in that action was the Secretary of Commerce operating under a different portion of the Atlantic Coastal Fisheries Cooperative Management Act. Id. The First Circuit in that action ruled the Administrative Procedure Act to be applicable because the Department of Commerce is undisputably a federal agency. Id.

Therefore, the Administrative Procedure Act does not provide an independent cause of action against either of the two named defendants. First, the Atlantic State Marine Fisheries

[8]

Commission is not an agency within the meaning of the Administrative Procedure Act.  Second, Director McKiernan is the director of a Massachusetts agency, not a federal agency within the meaning of the Administrative Procedure Act.

### III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), ECF No. 75 is **ALLOWED** and this action is DISMISSED for lack of subject matter jurisdiction.  The Clerk is directed to enter a separate order of dismissal and close the case.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[4]

---

[4] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 47 years.

[9]